IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LULA O. WATTERS, an individual, and   ) | |
| MIA G. FAILS, an individual,           ) | |
|                                        ) | |
|         Plaintiffs,                    ) | |
|                                        ) | |
| vs.                                    ) | CIVIL ACTION NO. 04-0536-CG-M |
|                                        ) | |
| LOUISIANA-PACIFIC CORPORATION,         ) | |
|                                        ) | |
|         Defendant.                     ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant, Louisiana-Pacific Corporation, for summary judgment (Doc. 21), plaintiffs' response thereto (Doc. 27), and defendant's reply (Doc. 28). The court finds that the alleged defamatory statements were either true or not published to a third party, or were privileged. Therefore, defendant's motion for summary judgment is due to be GRANTED.

## FACTS

This case involves two individuals who assert defamation claims against Louisiana-Pacific Corporation (hereinafter "LP"). Both plaintiffs, Watters and Fails, were employed by LP and were terminated on July 15, 2002, for falsifying their time cards. (Complaint, Watters depo, Ex. 9). Carolyn Sarblah, the head of Human Resources, told the plaintiffs they were being terminated for trying to steal time. (Watters depo. p. 104). Plaintiffs admit that it was a violation of company policy to steal time and that stealing time was an offense for which they could be terminated, however, they deny falsifying their time cards. (Watters depo. pp. 50, 134-135; Fails depo. pp. 54-55). Plaintiffs claim that they complained to their supervisor, Bob Oliver, and to Sarblah about the time clock not working

properly and about someone tampering with their time cards, but claim that Sarblah did not believe them. (Watters depo. pp. 83, 105, 119, 123; Fails depo. pp. 37, 42-43, 47, 49). Plaintiffs believe Sarblah terminated them because she had a personal vendetta against them. (Fails depo. pp. 76-77).

Watters remembers seeing Sarblah pulling time cards from the break room onWednesday, July 10, 2002. (Watters depo. pp. 110-113). When she tried to clock out that day, Watters noticed that her time card and Fails' time card were missing. (Watters depo. p. 110). Watters told her supervisor, Bob Oliver, about the missing time cards. (Watters depo. p. 113). When Oliver asked Sarblah about the missing time cards, she told him she had pulled them to investigate a matter. (Watters depo. p. 113). During that 12-hour shift, Sarblah talked to people about the plaintiffs' and the other employees' time cards. (Watters depo. pp. 113-14). Plaintiffs claim Sarblah accused them of theft. (Watters depo. p. 127). Watters testified during her deposition that Gary Williams, the plant manager, may have also accused her of theft, but she does not know if he did or not. (Watters depo. p. 127). Watters has no idea who Sarblah told about the theft. (Watters depo. p. 127). Watters knows Sarblah had a meeting with a group of people and that they all came to the conclusion that Watters had committed theft. (Watters depo. p. 128). The group of people consisted of people in management who were brought together to review the evidence Sarblah had against Watters and to make a decision about Watters' termination. (Watters depo. p. 128). After the meeting, the decision was made to terminate Watters. (Watters depo. p. 128). Other than the LP management employees, Watters knows of no one else whom Sarblah told about the theft, except that Sarblah forwarded information about the termination to the Department of Industrial Relations. (Watters depo. p. 128 and Exs. 10-21).

Watters heard rumors about her possible termination before she was actually terminated and testified that "apparently" Sarblah had started the rumors; however, she admitted that she did not know

2

whether Sarblah had anything to do with these rumors. (Watters depo. p. 129). Other employees, Elreeka Goldsmith, Marcus Prince, and Robert Thomas, mentioned the rumors to Watters, but Watters did not ask them where they heard the rumors and admitted that these are people who were interviewed by Sarblah about the situation. (Watters depo. pp. 130-131).

Oliver told plaintiff Fails that Sarblah had pulled plaintiffs' time cards and that she was looking at them and thinking of firing plaintiffs. (Fails depo. p. 64.). Fails did not know if Sarblah told anyone other than Bob Oliver that she was thinking of terminating the plaintiffs. (Fails depo. p. 65). Fails also did not know whom Sarblah interviewed during the investigation into the matter. (Fails depo. p. 66). Fails remembered hearing a rumor from Bob Oliver and Watters that Sarblah met with other members of LP's management during the investigation. (Fails depo. p. 66). Like Watters, she understood that Sarblah called these people together to present evidence against the plaintiffs and to get opinions about plaintiffs' termination. (Fails depo. p. 67). Fails admitted that she did not know of anyone else at the plant or outside the plant who would have been informed about Sarblah's suspicions about the time cards. (Fails depo. p. 67-68). Fails learned from Watters, about a week before the termination, that there were rumors they were going to be terminated. (Fails depo. p. 62).

After plaintiffs were terminated, they filed for unemployment compensation benefits. LP objected to the award of such benefits due to the reason for the terminations. (Watters depo. pp. 51-52 and Ex. 14; Fails depo. pp. 23-24.) Alice Harris, then an LP employee, and another unknown male representative of LP attended plaintiffs' first unemployment compensation hearing. (Watters depo. pp. 143-144; Fails depo. pp. 73-74). Watters subpoenaed Sarblah to her second unemployment compensation hearing and Sarblah explained the circumstances of the termination to the unemployment compensation board. (Watters depo. pp. 143-144). Fails did not hear anything about the rumors from

anyone except Watters. (Fails depo. p. 63).

Watters and Fails had each discussed the facts surrounding their terminations with their families. (Watters depo. p. 145; Fails depo. p. 68). Both plaintiffs had also listed the reason for their termination on applications for employment. (Watters depo. p. 146; Fails depo. p. 18).

## LEGAL ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252.
The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187

(11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies this initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Defamation**

To establish a prima facie case of defamation, plaintiffs must show:

[1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod).

Delta Health Group, Inc. v. Stafford, 887 So.2d 887, 895 (Ala. 2004) (quoting Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091 (Ala.1988)).

LP first asserts that the statements in question are not false. "Truth is an absolute defense to defamation... ." Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833, 840 (Ala. 2003) (quoting Foley

5

v. State Farm Fire & Cas. Ins. Co., 491 So.2d 934, 937 (Ala.1986)).

It is undisputed that plaintiffs were fired for falsifying their time cards. A statement to that effect would be true, regardless of whether plaintiffs are actually guilty of falsifying their time cards.[1] There also appears to be no dispute that the time cards were inaccurate, although the cause of the inaccuracies is in question. Thus, statements to other employees or at the unemployment hearings describing the time card discrepancies are not false statements. There is no indication that Sarblah or any other LP employee made any inaccurate statements concerning the time cards, the investigation of the time cards, or plaintiffs' termination and surrounding circumstances. However, Sarblah's accusation of theft could be construed as an untruth, or at least a half-truth if Sarblah did not provide the full context of the incident.

Even if the statements could be construed as untrue (perhaps if Sarblah stated accusations of theft without providing the full context of the incident), the only known publication of the statements was to LP employees when determining whether or not to fire the plaintiffs, and at the unemployment hearings. "It is well established, in the context of a defamation claim, that 'communications among employees in the course of transacting the company's business and in the proper scope of the employee's duties do not constitute a publication.'" Hale v. Vencor Nursing Centers East, LLC, 54 F.Supp.2d 1272, 1281 (S.D.Ala. 1999) (quoting Wyatt v. Bellsouth, Inc., 998 F.Supp. 1303, 1312-13 (M.D. Ala. 1998). The Wyatt court found that:

> The fact that two employees may have lied about Wyatt during an internal investigation is simply not defamation. Any communications during the internal investigation are properly characterized as communications among employees in the course of transacting the company's business and hence, are privileged. Wyatt's claim that he was told by other employees that they were scared of him also is not defamation. The statement was made to the plaintiff to explain the actions of the company. It plainly was not published to anyone outside of the business. The defendants are entitled to summary judgment on [the defamation Count.]

---

[1] Alabama is an at-will employment state, which means that , in the absence of an employment contract specifying otherwise, an employer can terminate an employee at its discretion. Burks v. Pickwick Hotel, 607 So. 2d 187, 189 (Ala. 1992). With limited exceptions not applicable to this case, an employer can terminate an employee for a good reason, a wrong reason, or no reason at all. Hinrichs v. Tranquilaire Hospital, 352 So. 2d 1130, 1131 (Ala. 1977). Plaintiffs have not asserted a claim for wrongful termination and, thus, the propriety of plaintiffs' termination is not even at issue here.

6

Wyatt, 998 F.Supp. at 1313. "[T]here is no publication, and thus no actionable defamation, '[a]s long as a communication to a nonmanagerial employee falls within the proper scope of that employee's knowledge or duties.'" Cantrell v. North River Homes, Inc., 628 So.2d 551, 553 (Ala.1993) (citing Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1093 (Ala.1988); Hoover v. Tuttle, 611 So.2d 290, 193 (Ala.1992)); see also Burks v. Pickwick Hotel, 607 So.2d 187, 190 (Ala. 1992) (communications to a few employees and only to the extent reasonably necessary to investigate plaintiff's employment behavior do not constitute publication to a third party). In this case, the only known statements were made to employees during the internal investigation, to plaintiffs themselves to explain the reason for their termination, or pursuant to subpoena at the unemployment hearing to explain the actions of the company. The only evidence concerning the first two categories of these statements is that they were made to LP employees in the line and scope of the employees' employment. Therefore, the court finds that the statements to plaintiffs and to other employees do not constitute publication to a third party.

Although the statements at the unemployment hearing were not made to employees, they are privileged pursuant to ALA.CODE § 25-4-116. Section 25-4-116 concerns employee record keeping for unemployment compensation purposes and requires that such information be held confidential, "except to the extent necessary for the proper presentation of the contest of a claim." The provision also provides the following:

> All letters, reports, communications and other matters, written or oral, from employer or employee to each other or to the director or any of his agents, representatives or employees, or to any official or board functioning under this chapter, which shall have been written, sent, delivered or made in connection with the requirements and administration of this chapter, shall be absolutely privileged and shall not be made the subject matter or basis for any civil action for slander or libel in any court.

ALA.CODE 1975 § 25-4-116 (1975). Thus, statements made at the unemployment hearings to contest the claim were privileged and cannot be the basis for plaintiffs' defamation claim. See Johnson v. Federal Express Corp., 147 F.Supp.2d 1268, 1276-77 (M.D.Ala. 2001) (statements that employee was fired for threatening FedEx supervisors, made in opposition to claim for unemployment benefits were privileged). The privilege is absolute. Id. at 1277.

Having found that the statements in question were either true, were not published to a third

7

party or were privileged, the court finds it unnecessary to address the remaining elements of a defamation claim.

## **CONCLUSION**

For the reasons stated above, defendant's motion for summary judgment (Doc. 21) is **GRANTED.**

**DONE and ORDERED** this 1st day of July, 2005.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE